UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEANNIE LY,<br><br>          Plaintiff,<br><br>    v.<br><br>TESLA, INC.,<br><br>          Defendant. | Case No.  24-cv-06521-VKD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 10 |

Plaintiff Jeannie Ly filed this action in Monterey County Superior Court against defendant Tesla Motors, Inc. ("Tesla") and Does 1-20 for violations of the California Fair Employment and Housing Act (FEHA), the California Family Rights Act (CFRA), and California public policy. Dkt. No. 10-2.  On September, 17, 2024, Tesla removed the action to this federal court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. Dkt. No. 1.  Tesla now moves to compel arbitration pursuant to a contractual arbitration agreement and to stay the action pending completion of the arbitration.  Dkt. No. 10.  The Court held a hearing on the motion on November 19, 2024.  Dkt. No. 16.  Tesla appeared for the hearing; Ms. Ly did not.[1]

Upon consideration of the moving and responding papers, as well as the oral argument presented at the hearing, the Court grants Tesla's motion to compel arbitration and stays the action

---

[1] The Court admonishes Ronald W. Makarem, Ms. Ly's counsel of record, for his failure to appear for the court-ordered hearing on this motion.  Mr. Makarem is reminded that future failures to comply with court orders, including failure to attend hearings, may result in monetary sanctions, dismissal of the action, entry of adverse judgment, or other appropriate sanctions.  *See* Standing Order for Civil Cases, https://www.cand.uscourts.gov/wp-content/uploads/2023/03/Standing-Order-for-Civil-Cases-April-2024.pdf.

pending completion of arbitration.[2]

## I.     BACKGROUND

Tesla is an automotive company that specializes in "designing, manufacturing, and selling electric cars and solar products." Dkt. No. 10-5 ¶ 2. According to the complaint, Ms. Ly worked for Tesla from January 2021 to April 2024, first as an Operations Specialist and later as a Senior Operations Specialist. Dkt. No. 10-2 ¶ 5. During her time at Tesla, Ms. Ly took several periods of medical leave, including between February 21, 2024 and March 22, 2024, in order to receive in vitro fertilization ("IVF") treatment. *Id.* ¶¶ 7-11. On April 15, 2024, Tesla terminated Ms. Ly's employment. *Id.* ¶ 12. Ms. Ly alleges that her termination was unlawful as it was based "in part or in whole" on her "sex, medical condition, physical disabilities, requests for accommodations, and/or exercise of . . . leave." *Id.* She brings claims for discrimination, failure to provide reasonable accommodations, failure to engage in an interactive process, and wrongful termination under California statutory and common law. *Id.* ¶¶ 16-111.

Tesla contends that all of Ms. Ly's claims are subject to mandatory arbitration. Dkt. No. 10. Tesla asserts that, on December 29, 2020, Ms. Ly executed an employment offer letter ("Offer Letter") from Tesla containing an arbitration clause ("Arbitration Provision"), which states in relevant part:

> In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and private arbitration in your city and state of employment conducted

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 9, 14. While the original complaint filed in state court references 20 Doe defendants, these defendants are not considered for the purposes of determining whether all parties consent to magistrate judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502-05 (9th Cir. 2017) (all named parties, whether served or unserved, must consent in order to vest jurisdiction in magistrate judge); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020) (distinguishing *Williams* with respect to unnamed "Doe" defendants); *see also Geppert v. Doe 1*, No. 23-cv-03257-SVK, 2023 WL 5804156, at *1 (N.D. Cal. Sept. 7, 2023) ("[P]laceholder Doe defendants are not 'parties' for purposes of assessing whether there is complete consent to magistrate judge jurisdiction.").

by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a. Any claim, dispute, or cause of action between the parties must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

b. The Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate as a representative in any representative action against the other, except to the extent this provision is unenforceable under the applicable law; and

c. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

d. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

e. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

f. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

g. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration; thus, claims for temporary or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration are permitted.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims. If one or more of the provisions in this arbitration agreement, or any portion thereof, are deemed invalid,

> unenforceable, or void under the Federal Arbitration Act or other applicable law, then the remaining provisions, or portions thereof, shall not thereby be affected and will continue in full force and effect, and shall be given full effect without regard to the invalid, unenforceable, or void provision, or portion thereof.

Dkt. No. 10-6 at ECF[3] 3-4.

Pursuant to this provision, Tesla asserts that Ms. Ly's claims must be resolved by arbitration conducted by JAMS. Dkt. No. 10. Ms. Ly does not dispute that she signed the Offer Letter containing the Arbitration Provision, or that the Arbitration Provision encompasses her claims against the company. Dkt. No. 13 at 1-2. Rather, she contends that the Arbitration Provision is invalid and should not be enforced because it is procedurally and substantively unconscionable. *Id.* at 1. Tesla maintains that the Arbitration Provision is valid and requires arbitration of Ms. Ly's claims. Dkt. No. 15 at 1-2. In the event that some parts of the Arbitration Provision are found to be unconscionable, Tesla argues that the Court should sever those parts and enforce the remainder. *Id.* at 11-14; Dkt. No. 10 at 13-14.

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs written arbitration agreements "evidencing a transaction involving commerce," *see* 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001), and requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement, *see* 9 U.S.C. § 3; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Under the FAA, a district court must compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of the agreement. *See Geier v. M-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016) (citing *Chiron Corp.*, 207 F.3d at 1130); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (citing 9 U.S.C. §§ 3, 4). As noted above, Ms. Ly does not dispute that the Arbitration Provision encompasses her claims. Thus, the only issue is

---

[3] Page numbers cited as "ECF __" are to those assigned by the ECF system.

1  whether the Arbitration Provision is a valid and enforceable agreement to arbitrate.

2  Arbitration agreements are "a matter of contract" and "may be invalidated by generally
3  applicable contract defenses, such as fraud, duress or unconscionability." *Rent-A-Ctr., W., Inc. v.*
4  *Jackson*, 561 U.S. 63, 67-68 (2010) (citation omitted). Parties may "agree to limit the issues
5  subject to arbitration" and "to arbitrate according to specific rules." *AT&T Mobility LLC v.*
6  *Concepcion*, 563 U.S. 333, 344 (2011). "[T]he party resisting arbitration bears the burden of
7  proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v.*
8  *Randolph*, 531 U.S. 79, 91 (2000). In determining the validity or enforceability of an arbitration
9  agreement, courts generally apply ordinary state-law principles that govern the formation of
10 contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

11 Here, there appears to be no dispute that California law applies. Dkt. No. 10 at 5, 8; Dkt.
12 No. 13 at 2.

### III. DISCUSSION

#### A. Tesla's Request for Judicial Notice

Federal Rule of Evidence 201 provides that a federal court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). This includes "undisputed matters of public record . . . [such as] documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citations omitted). However, a court may not take judicial notice of any *disputed* facts, even if stated in those same public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

Here, Tesla seeks judicial notice of 41 orders issued by state and federal courts granting or affirming decisions to grant motions to compel filed by Tesla in other cases. Ms. Ly does not oppose this request. *See generally* Dkt. No. 13. As court records, these orders are proper subjects of judicial notice. The Court therefore grants Tesla's request for judicial notice as unopposed.

#### B. Unconscionability

Ms. Ly argues that the Arbitration Provision is invalid and unenforceable because it is unconscionable. Dkt. No. 13. Unconscionability "has both a procedural and a substantive

5

1    element, the former focusing on oppression or surprise due to unequal bargaining power, the latter
2    on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24
3    Cal. 4th 83, 114 (2000) (quotations and citation omitted). Procedural and substantive
4    unconscionability "must *both* be present in order for a court to exercise its discretion to refuse to
5    enforce a contract or clause under the doctrine of unconscionability. But they need not be present
6    in the same degree." *Id*. (quotations and citation omitted). "Essentially a sliding scale is invoked
7    which disregards the regularity of the procedural process of the contract formation, that creates the
8    terms, in proportion to the greater harshness or unreasonableness of the substantive terms
9    themselves." *Id*. (quotations and citation omitted). "In other words, the more substantively
10   oppressive the contract term, the less evidence of procedural unconscionability is required to come
11   to the conclusion that the term is unenforceable, and vice versa." *Id*. The "central idea" of the
12   "unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with
13   terms that are unreasonably favorable to the more powerful party." *Sanchez v. Valencia Holding
14   Co., LLC*, 61 Cal. 4th 899, 911 (2015) (quotations and citations omitted). "Because
15   unconscionability is a contract defense, the party asserting the defense bears the burden of proof."
16   *Id*. (citation omitted).

### 1.     Procedural Unconscionability

18   Ms. Ly contends that the Arbitration Provision is procedurally unconscionable on the
19   grounds that (1) it is adhesive and (2) contains multiple additional elements of oppression and
20   surprise. Dkt. No. 13 at 3-5. Procedural unconscionability focuses on "oppression or surprise due
21   to unequal bargaining power." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir.
22   2017) (quotations omitted). "*Oppression* occurs where a contract involves lack of negotiation and
23   meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a
24   prolix printed form." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (quoting *Pinnacle Museum
25   Tower Assn. v. Pinnacle Mkt. Dev. (US)*, LLC, 55 Cal. 4th 223, 247 (2012)). There are degrees of
26   procedural unconscionability. "At one end of the spectrum are contracts that have been freely
27   negotiated by roughly equal parties, in which there is no procedural unconscionability." *Baltazar
28   v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (quotations omitted). "Contracts of adhesion

that involve surprise or other sharp practices lie on the other end of the spectrum." *Id*. (quotations omitted). "[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Id.* (alteration in original) (quotations omitted); *see also Poublon*, 846 F.3d at 1261 ("In the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high.") (quotations and citation omitted).

### a. Adhesion Contract

"An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis." *OTO*, 8 Cal. 5th at 126 (quotations omitted). "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching." *Baltazar*, 62 Cal. 4th. at 1244 (quotations and citation omitted). "If the contract is adhesive, the court must then determine whether other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable]." *Armendariz*, 24 Cal. 4th at 113 (alteration in original) (quotations and citation omitted).

Here, Ms. Ly argues that the Offer Letter containing the Arbitration Provision was offered to her "pre-drafted" and on a "take-it-or-leave-it" basis, rendering it a clear contract of adhesion. Dkt. No. 13 at 4. She asserts that this alone is a sufficient showing of procedural unconscionability. *Id.* at 3-4 (citing *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 68-69 (2020), *as modified* (Nov. 3, 2020)). Tesla observes that Ms. Ly made no attempt to negotiate any part of the Arbitration Provision and asked no questions about it. Dkt. No. 15 at 4-5. Tesla also argues that a contract is not per se unenforceable because it is one of adhesion. *Id*. at 3-5.

The Court agrees that the Arbitration Provision is a contract of adhesion. Tesla concedes that the Offer Letter and the Arbitration Provision it contains is a standardized employment offer that its "applicant tracking and onboarding system" created and sent to Ms. Ly via email. Dkt. No.

10-5 ¶¶ 7-8. Ms. Ly was not invited to negotiate its terms; rather, she was simply asked to accept the terms presented. *See* Dkt. 10-6 at ECF 5 ("If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below . . . ."); *see also OTO*, 8 Cal. 5th at 126 ("Arbitration contracts imposed as a condition of employment are typically adhesive . . . ."). Ms. Ly need not demonstrate she tried to negotiate the terms of Tesla's offer or the Arbitration Provision specifically, particularly where the unequal bargaining power between the parties is apparent. *See OTO*, 8 Cal. 5th at 127 ("[A]lthough One Toyota is correct that Kho did not attempt to negotiate, a complaining party need not show it tried to negotiate standardized contract terms to establish procedural unconscionability."); *Sanchez,* 61 Cal. 4th at 914 ("Moreover, in the context of consumer contracts, we have never required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions."); *see also Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 244 (2016) ("Carbajal was not required to show she attempted to negotiate the terms of the Agreement because the imbalance of bargaining power is apparent from the relationship between the parties.").

Tesla is correct that an adhesion contract is not unenforceable per se. *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 179 (2015). However, adhesion is an important factor in the procedural unconscionability analysis and may trigger the requirement for "closer scrutiny . . . of [the] overall fairness" of the contract. *Swain*, 57 Cal. App. 5th at 68 (quotations omitted); *see also Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 84 n.4 (2014) ("But the adhesive nature of a contract is one factor the courts may consider in determining the degree of procedural unconscionability."). Thus, as an adhesion contract, the Offer Letter and Arbitration Provision have at least some degree of procedural unconscionability.

### b. Additional Elements of Oppression and Surprise

Ms. Ly asserts that the Arbitration Provision, and the circumstances surrounding her signing of the Offer Letter, contain additional elements of oppression and surprise. Specifically, Ms. Ly argues that: (a) she was "pressured" to sign the Offer Letter containing the Arbitration Provision as a condition of her employment; (b) the text of the Arbitration Provision is "single-

8

spaced small font consist[ing] of dense legal provisions" and is not set off from the rest of the Offer Letter with a "heading, bold font, or underlined font"; (c) the Offer Letter contains no explanation of arbitration or its legal significance and fails to advise Ms. Ly to seek the advice of an attorney; and (d) the JAMS rules cited in the Arbitration Provision are not set out in the Offer Letter or attached to it. Dkt. No. 13 at 4-5. Tesla disputes that any of these factors weigh in favor of procedural unconscionability. Dkt. No. 15 at 4-7.

"The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *Swain*, 57 Cal. App. 5th at 69 (quoting *OTO*, 8 Cal. 5th at 126-27). "Surprise occurs when the allegedly unconscionable provision is hidden." *Carmona*, 226 Cal. App. 4th at 84.

<u>Pressure to Sign</u>: Ms. Ly asserts that "[c]onditioning an individual's employment on her acceptance of an agreement" indicates that she was subjected to significant pressure. Dkt. No. 13 at 5. Tesla counters that there is inherent—but not necessarily improper—pressure in every pending offer of employment and that Ms. Ly "voluntarily reviewed and signed the Offer Letter the same day she received it," although this was not required.[4] Dkt. No. 15 at 4. Ms. Ly asserts no other facts suggesting she was pressured to sign the Offer Letter. On the record presented, the Court agrees that Ms. Ly has not shown that she was pressured to sign the Offer Letter, such that she was not afforded adequate opportunity to review and consider the terms of Tesla's offer, including the Arbitration Provision, before agreeing to accept those terms.

<u>Format of the Arbitration Provision</u>: Relying principally on the California Supreme Court's decision in *OTO*, Ms. Ly argues that the format of the Arbitration Provision supports a

---

[4] The Offer Letter bears a date on its face of "12/ 02/ 2020" and contains language stating that the offer will expire if not signed and returned prior to "12/ 21/ 2020." Dkt. No. 10-6 at ECF 2, 5. Tesla relies on undisputed evidence that the Offer Letter was generated and sent to Ms. Ly on December 29, 2020. Dkt. No. 10-5 ¶¶ 8-12. At the hearing, Tesla explained that the dates in the Offer Letter are not correct, as both pre-date the date the letter was actually sent. Dkt. No. 16.

9

finding of both oppression and surprise.  In *OTO*, the contract at issue "[wa]s a paragon of prolixity, only slightly more than a page long but written in an extremely small font" with sentences that were "complex" and "filled with statutory references and legal jargon."  8 Cal. 5th at 128.  The arbitration provision at issue in that case was 51 lines compressed into a "single dense paragraph" that "challeng[ed] the limits of legibility."  *Id.*  Here, while the Arbitration Provision is in a small font, the text of the provision is in the same size and font as all other paragraphs in the Offer Letter.  It is not illegible.  Additionally, the Arbitration Provision is broken into paragraphs, some of which are set off by lettered paragraphs, distinguishing different aspects of the provision.  *See* Dkt. No. 10-6 at ECF 3 (paras. (a)-(g)).  Unlike the provision at issue in *OTO*, the Arbitration Provision does not include confusing statutory references or unnecessarily long and complex sentences.  *See OTO*, 8 Cal. 5th at 128.  While there is some use of legal terminology, it does not appear that the Arbitration Provision was "drafted with an aim to thwart, rather than promote, understanding."  *See id.* at 129.  Accordingly, the Court concludes that Ms. Ly has not shown that the format of the Arbitration Provision supports a finding of oppression or surprise.

<u>Lack of Explanation or Advice</u>:  Ms. Ly correctly observes that the Arbitration Provision contains no explanation of arbitration and does not advise her to seek advice of counsel before signing.  Dkt. No. 13 at 5.  Tesla argues that it was not required "to explain the advantages or disadvantages of arbitration . . . or even provide any set period of time to consult with an attorney," and that Ms. Ly "had the responsibility to understand what she was signing" when she executed the Offer Letter.  Dkt. No. 15 at 5, 7.  The Court agrees that Tesla has no affirmative obligation to ensure Ms. Ly understood all aspects of the Arbitration Provision or to suggest that she seek advice of counsel.  *See, e.g.*, *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 249 (2016) ("failure to explain the meaning of arbitration" alone is insufficient to increase procedural unconscionability); *see also Fleming v. Weather Shield Mfg., Inc.*, No. EDCV18-00589-GW(KKX), 2018 WL 6010365, at *5 (C.D. Cal. May 14, 2018) (fact that employee "did not seek the advice of counsel" was not procedurally unconscionable where he "d[id] not present evidence that he was prevented from doing so or otherwise could not have done so.").  While including such guidance in the Offer Letter could help mitigate any procedural unconscionability

that otherwise exists, Ms. Ly cannot demonstrate oppression and surprise based on the omission of such guidance or on her own purported lack of understanding of the Arbitration Provision and its legal significance. *Id.* Accordingly, the Court concludes that Ms. Ly has not shown that the omission of statements explaining arbitration or suggesting that she seek advice of counsel before signing supports a finding of oppression or surprise.

<u>Governing Rules Not Provided</u>: Ms. Ly argues that Tesla's "[f]ailure to provide the applicable arbitration rules is another factor that supports procedural unconscionability." Dkt. No. 13 at 5 (quoting *Carmona*, 226 Cal. App. 4th at 84). She does not explain which aspects of the JAMS rules, if any, are oppressive or surprising. Tesla responds that the JAMS rules cited in the letter are readily available online, and Ms. Ly had an opportunity to consult them if she wished before signing the Offer Letter. Dkt. No. 15 at 7-8.

Whether a failure to include or attach the rules that govern the arbitration process supports a finding of procedural unconscionability depends on the particular circumstances. The Court finds *Baltazar* instructive here:

> Baltazar argues that a somewhat greater degree of procedural unconscionability is present here—warranting closer scrutiny of the substantive fairness of the agreement's terms—because Forever 21 did not provide Baltazar with a copy of the AAA's rules for arbitration of employment disputes, which, by the terms of the arbitration agreement, govern any arbitration between the parties. . . . [C]ourts will more closely scrutinize the substantive unconscionability of terms that were "artfully hidden" by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement. . . . Baltazar's argument accordingly might have force if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement. But her challenge to the enforcement of the agreement has nothing to do with the AAA rules; her challenge concerns only matters that were clearly delineated in the agreement she signed.

62 Cal. 4th at 1246. *Baltazar* thus stands for the proposition that a failure to attach the rules governing the arbitration is not necessarily procedurally unconscionable, absent a showing that the employer "hid" rules that were unusual or that were otherwise unconscionable themselves. In the absence of any argument that the JAMS rules themselves contribute to the unconscionability of

the Arbitration Provision, Ms. Ly has not established that Tesla's failure to provide a copy of the applicable rules renders the provision procedurally unconscionable.

Having considered all of the elements Ms. Ly contends support a finding of procedural unconscionability, the Court concludes that the Arbitration Provision contains a minimal level of procedural unconscionability, principally arising from the fact that it is part of a contract of adhesion. *See, e.g., Garcia v. Start Yoshi, Inc.*, No. 23-cv-06518-VKD, 2024 WL 2274524, at *3 (N.D. Cal. May 17, 2024) (quoting *Poublon*, 846 F.3d at 1261-62) ("The adhesive nature of the Agreement, without more, would give rise to a low degree of procedural unconscionability at most.").

### 2.     Substantive Unconscionability

"Not all one-sided contract provisions are unconscionable[.]" *Sanchez*, 61 Cal. 4th at 911. Substantive unconscionability requires contract terms that are "overly harsh," "unduly oppressive," "unreasonably favorable," or so one-sided that they "shock the conscience." *Poublon*, 846 F.3d at 1261; *Sanchez*, 61 Cal. 4th at 910-11. These various formulations "all mean the same thing," *Sanchez*, 61 Cal. 4th at 911, and "point to the central idea that the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party," *Baltazar*, 62 Cal. 4th at 1244 (quotations and citations omitted). Ms. Ly contends that the Arbitration Provision is substantively unconscionable on the grounds that (1) it contains a carve-out for injunctive relief, (2) a Non-Disclosure and Inventions Assignment Agreement ("NDIAA") signed the same day as the Offer Letter is unconscionable, and the NDIAA's unconscionability impacts consideration of the Offer Letter's Arbitration Provision, as both agreements are part of the same transaction; and (3) Tesla unfairly enjoys a right of unilateral modification. Dkt. No. 13 at 6-8.

#### a.     Carve-Out for Injunctive Relief

The Arbitration Provision includes the following text:

> Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration; thus, claims for temporary or emergency injunctive relief to preserve the status quo

12

prior to and/or in aid of arbitration are permitted.

Dkt. No. 10-6 at ECF 4. Ms. Ly asserts that this provision carving out injunctive relief is unconscionable because, while the provision is "facially mutual," injunctions are more likely to be sought by employers than employees. Dkt. No. 13 at 6. In countering this argument, Tesla relies on the California Supreme Court's decision in *Baltazar*, holding that a carve-out provision for preliminary injunctions is not unconscionable when it "does no more than recite the procedural protections already secured" by California Code of Civil Procedure § 1281.8. Dkt. No. 15 at 8 (citing *Baltazar*, 62 Cal. 4th at 1247). In *Baltazar,* the court observed that "regardless of whether [the employer] is, practically speaking, more likely to seek provisional remedies than its employees, simply reciting the parties' rights under section 1281.8 does not place [the employee] at an unfair disadvantage." 62 Cal. 4th at 1248. While the language in the Arbitration Provision does not track the language of the statute as closely as in *Baltazar*, the Court agrees with Tesla that there is nothing in the provision that favors Tesla and disfavors its employee, as the provision on its face applies equally to both.[5] The Court concludes the carve-out for injunctive relief is not substantively unconscionable.

### b. The NDIAA No Bond Injunction Provision

Ms. Ly argues that the NDIAA that she executed on the same day as the Offer Letter should be considered with the Offer Letter as part of the same transaction under California Civil Code § 1642. Dkt. No. 13 at 6-7. She argues that the NDIAA contains an unconscionable provision—namely, a provision that provides Tesla the unilateral right to enforce the NDIAA by injunction or other equitable relief, without bond. *Id.* Tesla argues that the NDIAA, which governs protections for trade secrets or proprietary business information, is irrelevant to this action and should not be considered in conjunction with the Offer Letter for purposes of assessing the Arbitration Provision. Dkt. No. 15 at 9.

California Civil Code § 1642 provide that "[s]everal contracts relating to the same matters,

---

[5]Ms. Ly argues that the carve-out provision encompasses both preliminary and permanent injunctive relief. Dkt. No. 13 at 6. However, she does not explain how this should alter the Court's assessment of the provision.

between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642. Citing *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 491 (2023), Ms. Ly argues that the Offer Letter and the NDIAA should be considered together. In *Alberto*, the court found that an "Arbitration Agreement" and a "Confidentiality Agreement" should be considered together because they: (1) "were executed on the same day"; (2) "were both separate aspects of a single primary transaction—[the employee's] hiring"; and (3) "both governed, ultimately, the same issue—how to resolve disputes . . . arising from [the employee's] employment." 91 Cal. App. 5th at 490-91. The circumstances in *Alberto* are similar to the circumstances presented here: the Offer Letter and the NDIAA were executed on the same day; both were required to be executed as part of Ms. Ly's hiring; and both address disputes that may arise from Ms. Ly's employment. While the Court agrees with Tesla that Ms. Ly's claims in this action do not otherwise implicate any of the rights and obligations addressed in the NDIAA, the Court agrees with Ms. Ly that under *Alberto*, the two agreements may properly be considered together. *See Chee v. Tesla Inc.*, No. 24-cv-00180-TSH, 2024 WL 1898434, at *6 (N.D. Cal. Apr. 30, 2024) (considering the NDIAA in conjunction with the Offer Letter for purposes of unconscionability).

Ms. Ly argues that the NDIAA is unconscionable because it provides that only Tesla may seek injunctive or other equitable relief for violations of the NDIAA without posting a bond. Dkt. No. 13 at 7. Tesla responds that this provision falls within the "margin of safety" exception which allows "the party with superior bargaining strength a type of extra protection for which it has legitimate commercial need without being unconscionable." Dkt. No. 15 at 9-10 (quoting *Armendariz*, 24 Cal. 4th at 117). Tesla argues that the unilateral remedy favoring Tesla is justified because the need to protect against the harm that would arise from disclosure of Tesla's trade secrets and proprietary information constitutes a legitimate commercial need. *Id.* at 10.

Some courts have upheld arbitration agreements that carve-out protections for trade secrets. *See Correa v. Firestone Complete Auto Care*, 2013 WL 6173651, at *3 (N.D. Cal. Nov. 25, 2013) ("Correa is correct that the EDR Plan is not fully bilateral due to its exclusion of trade secret and non-compete claims. However, because business justification exists for those

14

1  exclusions, the Court finds that the substantive unconscionability is minimal."). However, other
2  courts have disapproved of "wholesale exception[s]" for claims arising from breach of a particular
3  agreement, *Farrar v. Direct Com., Inc.*, 9 Cal. App. 5th 1257, 1273 (2017), particularly where the
4  claims excepted from arbitration are likely to be "employer-initiated," *Ramirez v. Charter*
5  *Commc'ns, Inc.*, 16 Cal. 5th 478, 498 (2024). Furthermore, where an agreement contains
6  "additional provisions that waive the employer's need to obtain a bond before seeking an
7  injunction" or "waive the employer's need to show irreparable harm," such provisions may
8  "exceed the legitimate 'margin of safety' for the employer and are not mutual." *See Alberto*, 91
9  Cal. App. 5th at 492.

10  Here, the NDIAA requires an employee to "agree" that violating the agreement "may cause
11  the Company irreparable harm" and that Tesla has the right to enforce the agreement by obtaining
12  an injunction without having to post a bond. Dkt. No. 13-1 at ECF 6. Even if Tesla has a
13  legitimate commercial need to seek injunctive relief in court under the NDIAA, the Court is not
14  persuaded that it has a legitimate commercial need to be relieved of the burdens it would otherwise
15  have to establish "all of the essential elements for the issuance of an injunction." *Lange v.*
16  *Monster Energy Co.*, 46 Cal. App. 5th 436, 451 (2020) (quoting *Carbajal*, 245 Cal. App. 4th at
17  250). The Court therefore finds that the no bond injunction provision of the NDIAA is
18  unconscionable and it may be considered together with the Offer Letter and its Arbitration
19  Provision.

20                         **c.     Unilateral Modification**

21  The Offer Letter provides that "[t]his Agreement cannot be changed, amended, or modified
22  except in a written agreement signed by an officer of Tesla." Dkt. No. 10-6 at ECF 4. Ms. Ly
23  argues that this means the Offer Letter and the Arbitration Provision may be unilaterally modified
24  by Tesla, which renders the agreement unconscionable. Dkt. No. 13 at 7-8. At the hearing on the
25  motion, Tesla disagreed that the quoted language permits unilateral modification, as the phrase
26  "written agreement" indicates that Ms. Ly's consent is also required. Dkt. No. 16. The Court
27  concurs in this reading of the contractual language and therefore concludes that the Offer Letter
28

15

1    contains no provision for unilateral modification by Tesla.

2    **C.     Severability**

3    Both the Arbitration Provision and the NDIAA contain clauses providing for severance of any provisions deemed unenforceable. The Arbitration Provision states in relevant part that:

> If one or more of the provisions in this arbitration agreement . . . are deemed invalid, unenforceable, or void under the Federal Arbitration Act or other applicable law, then the remaining provisions, or portions thereof, shall not thereby be affected and will continue in full force and effect, and shall be given full effect without regard to the invalid, unenforceable, or void provision, or portion thereof.

Dkt. No. 10-6 at ECF 4. Similarly, the NDIAA states that:

> If any provision of this Agreement is found to be invalid, illegal or unenforceable and cannot be construed so as to render it enforceable, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

Dkt. No. 13-1 at ECF 7. Tesla argues that these provisions reflect "the parties' mutual and binding intent" to sever unconscionable terms. Dkt. No. 15 at 13 (citing *Poublon*, 846 F.3d at 1274). Ms. Ly responds that severance is inappropriate here because unconscionability permeates both agreements and any revision would require the Court to impermissibly augment the terms of these agreements. Dkt. No. 13 at 8-9 (citing *Armendariz*, 24 Cal. 4th at 124-25).

Under California law, "[a] court may 'refuse to enforce the entire agreement' only when it is 'permeated' by 'unconscionability.'" *Poublon*, 846 F.3d at 1272 (quoting *Armendariz*, 24 Cal. 4th at 122). "In each case, the dispositive question is whether the central purpose of the contract is so tainted with illegality that there is no lawful object of the contract to enforce." *Id.* at 1273. (quotations and citation omitted); *see also Armendariz*, 24 Cal. 4th at 124 ("Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced."). "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Armendariz*, 24 Cal.

16

4th at 124; *see also Poublon*, 846 F.3d at 1272 (same).

Here, the Court finds minimal procedural unconscionability, and no substantive unconscionability within the Arbitration Provision itself but only in the separate NDIAA. The offending provision of the NDIAA does not "permeate" the Offer Letter, the Arbitration Provision, or the NDIAA, nor does it "taint" those agreements with illegality. No reformation, re-writing, or augmentation of any agreement is required. The unconscionable portion of the NDIAA may be remedied by severing section 6 from the NDIAA, as provided by the contractual severance provisions, without disrupting the Arbitration Provision's chief objective of submitting Ms. Ly's claims to arbitration with JAMS before a neutral arbitrator. *See, e.g., Garcia,* 2024 WL 2274524, at *7 (severing attorneys' fees and unilateral modification provisions).

## IV. CONCLUSION

Based on the foregoing, the Court grants Tesla's motion to compel arbitration. The present action is stayed pending completion of the arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472 (2024). The parties shall file a joint status report within **30 days** of completion of the arbitration, or **August 25, 2025**, whichever is earlier.

**IT IS SO ORDERED.**

Dated: November 25, 2024

Virginia K. DeMarchi
United States Magistrate Judge

17